02CV884 (DJS)
Part 2

L

①

Nov 12, 1996

To whom I hope this concerns:

I c/o M. Richards have been employed by the Ct. dept. of corrections since Aug 12, 88. I have been harassed by Lt. Chouinard since Jan. 11, 95 (incident report No. 494-94).

On Sept. 10, 95 (incident report No. 1012) I was experiencing great pain in my back - due to a prior injury - at the beginning of my shift. I requested medical attention and was denied by my supervisor, Lt. Chouinard. I worked 7 more hours in great pain and was ordered by Lt. Chouinard to do cube shakedowns after the denial. Thus aggravating my condition. I immediately sought a doctor after work and remained out of work for almost 3 months because of this incident.

Upon my return to work on Dec. 4, 95, Lt. Chouinard tormented me my first day, I was into the shift (incident report No. 1113) in the presence of c/o Gartrell. It was on this day that Lt. Chouinard attempted to make c/o Gartrell alter statements in his incident report to make me appear suspect. When c/o Gartrell declined, Lt. Chouinard began to harass him over time.

Lt. Chouinard is notorious for reckless behavior. There are many other allegations against him by other correctional officers. To this day, I dont believe he has been reprimanded for one.

(2)

11/2/98

It appears as though the dept. suppresses complaints about his deviant behavior and allows it to continue.

I would like to add that on March 31, 97 –another supervisor– Lt. Hoffman put his hand on my penis in A dorm. and asked me, "What's that". I stated that it was my penis. He then said, "Well, if that's your penis, then I'm a jealous man." I began to inquire about the weather in order to avoid discussing the embarrassing and humiliating assault that had just occurred. Upon his exit Lt. Hoffman said, "Mr. Richards, I'm a jealous man."

I notified Cpt Torres via memo 4/6/97 who called me at home the next day requesting a report on the incident with Lt. Hoffman.

③

I returned to work a couple of days later and handed my report to Cpt. Torres who told me to hold onto it. Later that day, I was ordered to engage in an informal meeting in the control center by Lt. Cleveland to discuss my written complaint. C/o Goodyear was my appointed union steward.

Upon entering the control center, I was shocked to see Lt. Hoffman at this meeting. Now the confidentiality of my complaint was breached and Lt. Cleveland explained to me that I was here because Warden Strange wanted to keep this matter in house. Initially I assumed this arrangement was made to discuss the facts of the incident. Upon realizing otherwise, I became extremely uncomfortable. This appeared to be an attempt to conceal facts and cover up the serious nature of the assault.

I did not want to participate in discussion, but I did in order to protect my employment. Under duress, I felt compelled to say anything to appease my supervisors and to end the meeting as soon as possible. Upon completion, I felt defeated and extremely humiliated by the disclosure of my complaint in the presence of Lt. Hoffman. I was dismayed that the nature of my complaint was not taken seriously and forwarded through the proper channels by Warden Strange.

I did not pursue my complaint any further for fear of retaliation. I felt that if an authority as high as a Warden would do this, then my job

(4)

was in jeopardy. The employer handbook for state employees states that an employer is required to submit all sexual complaints to affirmative action/office and Warden Strange did not.

The next day I was called down to the Lts office to sign a paper that included some of things that were and were not said in the previous meeting. It implied the reason I wrote my complaint was because I was a disgruntled employee. I refused to sign.

Thirty days after the incident, Warden Strange called me to his office and in the presence of Dep. Warden Dion demanded I sign the said paper. I refused and requested a union steward. Warden Strange stated that he wanted to keep this matter in house and that if I did not sign he would have to notify the CHRO. I refused again hoping that he would notify the CHRO. Warden Strange then said, "Well, it seems kind of petty to me that you had an erection in all may friendly."

Warden Strange's statement was extremely hurtful and demeaning. I was so disturbed by his comment that I became very anxious and depressed. I felt any recourse was hopeless. I continue to deal with the emotional damage to this day. I have recently begun taking medication for this condition. It has enabled me to finally record the chain of events that have incapacitated me for so long. I now feel it is imperative to rectify this obstruction of justice that has paralyzed my abilities for so long.

Thank you,

Mark Richards

Nov. 12, 1996

To whom I hope this concerns:

I c/o Mr. Richards have been employed by the Ct. dept. of corrections since Aug 12, 88. I have been harassed by Lt. Chouinard since Jan. 11, 95 (incident report No. 494-94).

On Sept. 10, 95 (incident report No. 1012) I was experiencing great pain in my back - due to a prior injury - at the beginning of my shift. I requested medical attention and was denied by my supervisor, Lt. Chouinard. I worked 7 more hours in great pain and was ordered by Lt. Chouinard to do cube shakedowns after the denials this aggravated my condition. I immediately sought a doctor after work and remained out of work for almost 3 months because of this incident.

Upon my return to work on Dec. 4, 95, Lt. Chouinard tormented me my first day, I was into the shift (incident report No. 1113) in the presence of c/o Gartrell. It was on this day that Lt. Chouinard attempted to make c/o Gartrell alter statements in his incident report to make me appear suspect. When c/o Gartrell declined, Lt. Chouinard began to harass him over time.

Lt. Chouinard is notorious for reckless behavior. There are many other allegations against him by other correction officers. To this day, I don't believe he has been reprimanded for one.

②

11/12/98

It appears as though the dept. suppresses complaints about his deviant behavior and allows it to continue.

I would like to add that on March 31, 97 another supervisor- Lt. Hoffman put his hand on my penis in A dorm and asked me, "What's that". I stated it was my penis. He then said, "Well, if that's your penis, then Im a jealous man." I began to inquire about the weather in order to avoid discussing the embarrassing and humiliating assault that I had just occurred. Upon his exit Lt. Hoffman said, "Mr. Richards, I'm a jealous man."

I notified Cpt. Torres via memo 4/8/97 who called me at home the next day requesting a report on the incident with Lt. Hoffman

③

I returned to work a couple of days later and handed my report to Cpt. Torres who told me to hold onto it. Later that day, I was ordered to engage in an informal meeting in the control center by Lt. Cleveland, to discuss my written complaint. C/o Goodyear was my appointed union steward.

Upon entering the control center, I was shocked to see Lt. Hoffman at this meeting. Now the confidentiality of my complaint was breached and Lt. Cleveland explained to me that I was here because Warden Strange wanted to keep this matter in house. Initially I assumed this arrangement was made to discuss the facts of the incident. Upon realizing otherwise, I became extremely uncomfortable. This appeared to be an attempt to conceal facts and cover up the serious nature of the assault.

I did not want to participate in discussion, but I did in order to protect my employment. Under duress, I felt compelled to say anything to appease my supervisors and to end the meeting as soon as possible. Upon completion, I felt deluded and extremely humiliated by the disclosure of my complaint in the presence of Lt. Hoffman. I was dismayed that the nature of my complaint was not taken seriously and forwarded through the proper channels by Warden Strange.

I did not pursue my complaint any further for fear of retaliation. I felt that if an authority as high as a Warden would do this, then my job

④

was in jeopardy. The employer handbook for state employees states that an employer is required to submit all sexual complaints to affirmative action, etc. and Warden Strange did not.

The next day I was called down to the Lts office to sign a paper that included some of things that were and were not said in the previous meeting. It implied the reason I wrote my complaint was because I was a disgruntled employee. I refused to sign.

Thirty days after the incident, Warden Strange called me to his office and—in the presence of Dep. Warden Dion—demanded I sign the said paper. I refused and requested a union steward. Warden Strange stated that he wanted to keep this matter in house and that if I did not sign he would have to notify the CHRO. I refused again hoping that he would notify the CHRO. Warden Strange then said, "Well, it seems kind of odd to me that you had an erection in all males facility."

Warden Strange's statement was extremely hurtful and demeaning. I was so disturbed by his comment that I became very anxious and depressed. I felt any recourse was hopeless. I continue to deal with the emotional damage to this day. I have recently begun taking medication for this condition. It has enabled me to finally record the chain of events that have incapacitated me for so long. I now feel it is imperative to rectify this obstruction of justice that has paralyzed my abilities for so long.

Thank you

Mark Reynolds

①

Nov. 12, 1996

To whom I hope this concerns:

I c/o M. Richards have been employed by the Ct. dept. of corrections since Aug 12, 88. I have been harassed by Lt. Chouinard since Jan. 11, 95 (incident report No. 494-94).

On Sept. 10, 95 (incident report No. 1012) I was experiencing great pain in my back - due to a prior injury - at the beginning of my shift. I requested medical attention and was denied by my supervisor, Lt. Chouinard. I worked 7 more hours in great pain and was ordered by Lt. Chouinard to do cube shakedowns after the denial. This aggravated my condition. I immediately sought a doctor after work and remained out of work for almost 3 months because of this incident.

Upon my return to work on Dec. 4, 95, Lt. Chouinard tormented me my first day, I was into the shift (incident report No. 1113) in the presence of c/o Gartrell. It was on this day that Lt. Chouinard attempted to make c/o Gartrell alter statements in his incident report to make me appear suspect. When c/o Gartrell declined, Lt. Chouinard began to harass him over time.

Lt. Chouinard is notorious for reckless behavior. There are many other allegations against him by other correctional officers. To this day, I dont believe he has been reprimanded for one.

11/12/98

It appears as though the dept. suppresses complaints about his deviant behavior and allows it to continue.

I would like to add that on March 31, 97 -another supervisor- Lt. Hoffman put his hand on my penis in A dorm. and asked me, "What's that?" I stated that it was my penis. He then said, "Well, if that's your penis, then I'm a jealous man." I began to inquire about the weather in order to avoid discussing the embarrassing and humiliating assault that I had just occurred. Upon his exit Lt. Hoffman said, "Mr. Richards, I'm a jealous man."

I notified Cpt. Torres via memo 4/6/97 who called me at home the next day, requesting a report on the incident with Lt. Hoffman.

③

I returned to work a couple of days later and handed my report to Cpt. Torres who told me to hold onto it. Later that day, I was ordered to engage in an informal meeting in the control center by Lt. Cleveland to discuss my written complaint. c/o Goodyear was my appointed union steward.

Upon entering the control center, I was shocked to see Lt. Hoffman at this meeting. Now the confidentiality of my complaint was breeched and Lt. Cleveland explained to me that I was here because Warden Strange wanted to keep this matter in house. Initially I assumed this arrangement was made to discuss the facts of the incident. Upon realizing otherwise, I became extremely uncomfortable. This appeared to be an attempt to conceal facts and cover up the serious nature of the assault.

I did not want to participate in discussion, but I did in order to protect my employment. Under duress, I felt compelled to say anything to appease my supervisors and to end the meeting as soon as possible. Upon completion, I felt deluded and extremely humiliated by the disclosure of my complaint in the presence of Lt. Hoffman. I was dismayed that the nature of my complaint was not taken seriously and forwarded through the proper channels by Warden Strange.

I did not pursue my complaint any further for fear of retaliation. I felt that if an authority as high as a Warden would do this, then my job

④

was in jeopardy. The employer handbook for state employees states that an employer is required to submit all sexual complaints to affirmative action[?] and Warden Strange did not.

The next day I was called down to the lt's office to sign a paper that included some of things that were and were not said in the previous meeting. It implied the reason I wrote my complaint was because I was a disgruntled employee. I refused to sign.

Thirty days after the incident, warden Strange called me to his office and in the presence of lt. warden Dion demanded I sign the said paper. I refused and requested a union steward. Warden Strange stated that he wanted to keep this matter in house and that if I did not sign he would have to notify the CHRO. I refused again hoping that he would notify the CHRO. Warden Strange then said, "Well, it seems kind of odd to me that you had an erection in all male facility".

⑤

Warden Strange's statement was extremely hurtful and demeaning. I was so disturbed by his comment that I became very anxious and depressed. I felt any recourse was hopeless. I continue to deal with the emotional damage to this day. I have recently begun taking medication for this condition. It has enabled me to finally record the chain of events that have incapacitated me for so long. I now feel it is imperative to rectify this obstruction of justice that has paralyzed my abilities for so long.

Thank you
Mark Richards

Department of Correction

| Facility/CSO   Willard C. I. | | | Incident location   C-dorm | | | Report no. 072898A | |
|---|---|---|---|---|---|---|---|
| Prepared by   C/O M Richards | | | Title   c/o | | | Report date 7-20- | |
| Incident class   ☐1  ☐1a  ☐2  ☐3   Type | | | | | | Report date | |
| | | | | | | Time 11:53  ☐a.m.  ☐p. | |

| Inmate name (last and first) | Hsg unit | Race | ID no. | Status | Staff name (last and first) | Race | Title | Sta |
|---|---|---|---|---|---|---|---|---|
| | | | | | Crotty John | W | D.W. | E |
| | | | | | Rodriguez Nelson | H | Cpt. | S |
| | | | | | Richards Matt | W | c/o | V |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

RECEIVED
JUL 24 1998
WILLARD/CYBULSKI C.I.
WARDEN'S OFFICE

Status code: V=victim, S=suspect, E=escape, R=first employee responder, W=inmate witness, EW=employee witness

Race Code: W=white, B=black, H=Hispanic, N=native American, O=other

Narrative: At the above date + time deputy warden Crotty and Cpt. Rodriquez opened the sliding door behind this officers desk. At the same time this officer stood up in respect for his superiors. Immediately upon standing, Cpt. Rodriguez firmly placed his hand below my chest and abruptly swept his hand downwards to my crotch area. He swiftly did this a second time. He then began to inquire about the supply order forms and asked where they were located with total disregard to what had just occurred. I was completely stunned and felt violated by his action. I could only answer his questions until he completed his business and left the dormitory with deputy warden Crotty

Reporting employee signature   M Richards

Title   c/o

Date 7/23/98

## FOLLOW-UP

| Property damage | | Value $ |
|---|---|---|
| Contraband recovered | | |

| Physical force | Chemical agents | Restraints |
|---|---|---|

Assigned to:
☐ Protective custody
☐ Administrative detention
☐ 15-minute watch
☐ Isolation
☐ Outside hospital
☐ Other:
☐ Medical

FACILITY Willard | SUPPLE_ARY STATEMENT TAKEN YES [X] NO [ ]
YES [ ] NO [X]

NATURE OF COMPLAINT II 98-68

STATUS

LAST NAME Richards | FIRST NAME Matthew | M.I. | SEX m | RACE White | DOB |

DO/ADMIT | CHARGES | ID #

OCCUPATION IF STAFF INVOLVED Corrections Officer | ADDRESS | ZIP

The following statement is made voluntarily without threat or promise of any benefit to me. I have submitted and read this statement and it is true to the best of my knowledge.

Signature _(signed)_                    Date 9/1/98

INVESTIGATOR R. Ettenich | SUPERVISOR | TIME | DATE 9/1/98

REPORT

I have been employed by the DOC for the past 10 years. My place of work for the past 8 years has been @ Willard CC.

At approx 11:53 Am on 9/20/98 Capt. M. Rodriguez and Dep Warden Crotty entered my assigned Doem-C at Willard CC. At the time I stood up out of respect. Immediately upon standing Capt. Rodriguez firmly placed his hand below my chest and abruptly swept his hand downwards to my crotch area. He did this a second time. Capt Rodriguez then began to inquire about the supply order forms and inquired about there location

INVESTIGATOR'S SIGNATURE _(signed)_ | SUPERVISOR'S SIGNATURE | PAGE OF PAGES 1 - 4 | DATE 9/1/98

FACILITY Hilland

PREVIOUSLY INTERVIEWED
YES [ ]   NO [X]

SUPPLEMENTARY

STATEMENT TAKEN
YES [X]   NO [ ]

NATURE OF COMPLAINT   II98-68

PERSON INTERVIEWED   CO Matthew Richards

with total disregard to what had just occurred. I was completely stunned and felt violated by his action. I could only answer his questions until he completed his business and left the dormitory with Deputy Warden Crotty.

I did not get any help nor did I seek Anyone's assistance in writing this incident Report.

I was shocked by what had taken place and I could only answer questions at that time which pertained to my duties Incident on 7/20/98 - wrote report on 7/23/98 I did this because I was afraid of retaliation by because of a prior incident.

Do you have any witnesses to this incident?
No

Why did you not report this to Dep Warden Crotty?
I don't know.

I wrote this report on 7/23/98 and   (MR)

INVESTIGATOR'S SIGNATURE

SUPERVISOR'S SIGNATURE

PAGE  OF  PAGES
2-4

DATE
9/1/98

FACILITY: Willard

PREVIOUSLY INTERVIEWED  YES [ ]  NO [X]

SUPPLE. ...NTARY

STATEMENT TAKEN  YES [X]  NO [ ]

NATURE OF COMPLAINT: #I 98-68

PERSON INTERVIEWED: CO Richards

submitted on 7/24/98. I gave this report to CO Ordonez, it was in a sealed envelope. I asked him to give it to a supervisor. I was not aware of what had happened to the report until 7/27/98 when I was present at a fact finding done by DW Dion.

- Why would Capt Rodriguez do this to you?  I have no idea.

- How long have you known Capt Rodriguez? Approx 4.5 years as a working relationship

- Have you had prior dealings or issues with Capt Rodriguez?  NO

- Demonstrate what took place?
    - swept hand down twice

- Did you ask management to keep Capt Rodriguez away from you? No

- Why did you not report this to the State Police?  I don't know - Reported to 1 warden

- Would you be willing to take a polygraph exam?

MR

INVESTIGATOR'S SIGNATURE: [signature]

SUPERVISOR'S SIGNATURE:

PAGE OF PAGES: 3-4

DATE: 9/1/98

FACILITY Williand      PREVIOUSLY INTERVIEWED    SUPPLE. TARY        STATEMENT TAKEN
                       YES [ ]  NO [X]                               YES [X]  NO [ ]

NATURE OF COMPLAINT  II98-68

PERSON INTERVIEWED  CO Richards

Who did you discuss this incident with?
CO Dudzynski - spoke to her prior
to turning in the incident report.
She told me to do what I had to
do.

- Captain Rodriguez was possibly attempting
to dust me off Brushing dust from
my uniform, twice. I do not like
people placing their hands on me. I
feel the Captain's actions were accidental,
in the sense of touching the croch area.

- I do not expect any Repercussions over
this incident, and would like my
personal space respected.

ME

INVESTIGATOR'S SIGNATURE    SUPERVISOR'S SIGNATURE    PAGE  OF  PAGES    DATE
Amy Flinn                                              4 - 4             9/1/98

| FACILITY Willard | | PREVIOUSLY INTERVIEWED YES [ ] NO [X] | | STATEMENT TAKEN YES [X] NO [ ] |
|---|---|---|---|---|

NATURE OF COMPLAINT  II 98-68

| STATUS | LAST NAME Richards | | FIRST NAME Matthew | M.I. | SEX m | RACE White | DOB | A |
|---|---|---|---|---|---|---|---|---|

| DO/ADMIT | | CHARGES | | ID # |
|---|---|---|---|---|

| OCCUPATION IF STAFF INVOLVED Corrections Officer | ADDRESS | ZIP |
|---|---|---|

The following statement is made voluntarily without threat or promise of any benefit to me. I have submitted and read this statement and it is true to the best of my knowledge.

Signature *Matt Richards*

Date 9/1/98

(n.e.)

| INVESTIGATOR R. Elledich | SUPERVISOR | TIME | DATE 9/1/98 |
|---|---|---|---|

REPORT  I have been employed by the DOC for the past 10 years. My place of work for the past 8 years has been @ Willard CC.

At approx 11:53 am on 7/20/98 Capt. N. Rodriguez and Dep Warden Cnotty entered my assigned Dorm-C at Willard CC. At the time I stood up out of respect. Immediately upon standing Capt. Rodriguez firmly placed his hand below my chest and abruptly swept his hand downwards to my crotch area. He did this a second time. Capt Rodriguez then began to inquire about the supply order forms and inquired about there location

(n.e.)

| INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE OF PAGES 1-4 | DATE 9/1/98 |
|---|---|---|---|

FACILITY  Niantic          PREVIOUSLY INTERVIEWED        SUPPLEMENTARY              STATEMENT TAKEN
                           YES [ ]   NO [X]                                        YES [X]   NO [ ]

NATURE OF COMPLAINT    II 98-68

PERSON INTERVIEWED    CO Matthew Richards

with total disregard to what had just occurred. I was completely stunned and felt violated by his action. I could only answer his questions until he completed his business and left the dormitory with Deputy Warden Crotty.

I did not get any help nor did I seek anyone's assistance in writing this incident report.

I was shocked by what had taken place and I could only answer questions at that time which pertained to my duties. Incident on 7/20/98 - wrote report on 7/22/98. I did this because I was afraid of retaliation by because of a prior incident.

Do you have any witnesses to this incident?
   No

Why did you not report this to Dep Warden Crotty?
   I don't know.

I wrote this report on 7/22/98 and (MR)

| INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE  OF  PAGES | DATE |
|---|---|---|---|
| | | 2-4 | 9/1/98 |

FACILITY  Whitord

YES [ ]  NO [X]  SUPPLE. ONTARY  STATEMENT TAKEN
YES [X]  NO [ ]

NATURE OF COMPLAINT  II 98-68

PERSON INTERVIEWED  CO Richards

submitted on 7/24/98 I gave this report
to CO Ordonez, it was in a sealed
envelope. I asked him to give it to a
supervisor. I was not aware of what
had happened to the report until 7/28/98
when I was present at a fact finding
done by DW Dion.

- Why would Capt Rodriguez do this to
you?  I have no idea.

- How long have you known Capt Rodriguez?
Approx 4.5 years As a working relationship

- Have you had prior dealings or issues with
Capt Rodriguez?  No

- Demonstrate what took place?
-swept hand down twice

- Did you ask management to keep
Capt Rodriguez away from you?  No

- Why did you not report this to the
State Police?  I don't know Reported to I
WARDENS

- Would you be willing to take a polygraph
exam?  MR

| INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE  OF  PAGES | DATE |
|---|---|---|---|
| | | 3-4 | 9/1/98 |

FACILITY Willard   DULY INFORMED    SUPPLE [ ]  ITARY    STATEMENT TAKEN
                   YES [ ]  NO [X]                       YES [X]  NO [ ]

NATURE OF COMPLAINT   II98-68

PERSON INTERVIEWED   CO Richards

Who did you discuss this incident with?
CO Dudzynski - spoke to her prior
to turning in the incident report.
She told me to do what I had to
do.

— Captain Rodriguez was possibly attempting
to dust me off Brushing dust from
my uniform twice. I do Not like
people placing their hands on me. I
feel the Captain's actions were accidental,
in the sense of touching the croch area.

— I do Not expect any Reprocussions over
this incident. and would like my
personal space respected.

(Me)

INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE OF PAGES | DATE
                         |                        |    4 - 4      |  9/1/98

FACILITY Willard

PREV. [ ] INTERVIEWED YES [ ] NO [X]

MODEL [ ]

STATEMENT TAKEN YES [X] NO [ ]

NATURE OF COMPLAINT  II 98-68

STATUS

| LAST NAME | FIRST NAME | M.I. | SEX | RACE | DOB | A |
|---|---|---|---|---|---|---|
| Richards | Matthew | | M | White | | |

DO/ADMIT

CHARGES

ID #

OCCUPATION IF STAFF INVOLVED  Corrections Officer

ADDRESS

ZIP

The following statement is made voluntarily without threat or promise of any benefit to me. I have submitted and read this statement and it is true to the best of my knowledge.

Signature _Matt Richards_

Date 9/1/98

INVESTIGATOR  R. Eltedich

SUPERVISOR

TIME

DATE 9/1/98

REPORT

I have been employed by the DOC for the past 10 years. My place of work for the past 8 years has been a Willard CC.

At approx 11:53 AM on 7/20/98 Capt. N. Rodriguez and Dep Warden Cnotty entered my Assigned Dorm-C at Willard CC. At the time I stood up out of respect. Immediately upon standing Capt. Rodriguez firmly placed his hand below my chest and abruptly swept his hand downwards to my crotch area. He did this a second time. Capt Rodriguez then began to inquire about the supply order forms and inquired about there locations

| INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE OF PAGES | DATE |
|---|---|---|---|
| | | 1-4 | 9/1/98 |

FACILITY Niantic    PREVIOUSLY INTERVIEWED YES [ ] NO [X]    SUPPLEMENTARY    STATEMENT TAKEN YES [X] NO [ ]

NATURE OF COMPLAINT   II 98-68

PERSON INTERVIEWED   CO Matthew Richards

with total disregard to what had just occurred. I was completely stunned and felt violated by his action. I could only answer his questions until he completed his business and left the dormitory with Deputy Warden Crotty.

I did not get any help nor did I seek anyone's assistance in writing this incident report.

I was shocked by what had taken place and I could only answer questions at that time which pertained to my duties

Incident on 7/20/98 - wrote report on 7/23/98

I did this because I was afraid of retaliation by because of a prior incident.

Do you have any witnesses to this incident? NO

Why did you not report this to Dep Warden Crotty?
I don't know.

I wrote this report on 7/23/98 and   (MR)

---

| INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE OF PAGES | DATE |
|---|---|---|---|
| [signature] | | 2-4 | 9/1/98 |

FACILITY ___Wethered___   PREVIOUSLY INTERVIEWED  YES [ ] NO [X]   SUPPLEMENTARY   STATEMENT TAKEN YES [X] NO [ ]

NATURE OF COMPLAINT ___II 98-62___

PERSON INTERVIEWED ___C.O. Richards___

submitted on 7/24/98. I gave this report to CO Ordonez, it was in a sealed envelope. I asked him to give it to a supervisor. I was not aware of what had happened to the report until 11/21/98 when I was present at a fact finding done by DW Dion.

- Why would Capt. Rodriguez do this to you? I have no idea.

- How long have you known Capt. Rodriguez? Approx 4.5 years as a working relationship

- Have you had prior dealings or issues with Capt. Rodriguez? NO

- Demonstrate what took place?
    - swept hand down twice

- Did you ask management to keep Capt. Rodriguez away from you? No

- Why did you not report this to the State Police? I don't know - Reported to I (Williams)

- Would you be willing to take a polygraph exam? MR

| INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE OF PAGES | DATE |
|---|---|---|---|
| | | 3-4 | 9/1/98 |

FACILITY __Willand__     SUPPLE.    _TARY_    STATEMENT TAKEN  YES [✓]  NO [ ]

NATURE OF COMPLAINT  __II98-68__

PERSON INTERVIEWED  __CO Richards__

Who did you discuss this incident with?
CO Dudzynski - spoke to her prior
to turning in the incident Report.
She told me to do what I had to
do.

- Captain Rodriguez was possibly attempting
to dust me off Brushing dust from
my uniform, twice. I do Not like
people placing their hands on me. I
feel the Captain's actions were accidental,
in the sense of touching the croch area.

- I do Not expect Any Repercussions over
this incident. and would like my
personal space respected!

(MR)

INVESTIGATOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | PAGE OF PAGES | DATE
--- | --- | --- | ---
 | | 4 - 4 | 9/1/98

Printed on recycled (or recovered) paper

| To | NAME, TITLE | Cpt Torres | DATE | 4/2/97 |
| | AGENCY, ADDRESS | | | |

| From | NAME, TITLE | c/o M Richards | TELEPHONE | |
| | AGENCY, ADDRESS | | | |

Subject: This letter is in regards to the fact that this officer - M Richards, was patted on my penis by Lt. Hoffman on March 31, 97 at approximately 1.30 PM in A-dorm without consent or reasoning. This action was extremely humiliating and degrading. The effects of this infringement has caused serious problems in my personal and professional life.

c/o M. Richards

Printed on recycled (or recovered) paper

| | NAME, TITLE | | DATE |
|---|---|---|---|
| **To** | Cpt Torres | | 4/2/97 |
| | AGENCY, ADDRESS | | |

| | NAME, TITLE | | TELEPHONE |
|---|---|---|---|
| **From** | c/o M Richards | | |
| | AGENCY, ADDRESS | | |

Subject: This letter is in regards to the fact that this officer - M. Richards, was patted on my penis by Lt. Hoffman on March 31, 97 at approximately 1:30 PM in A-dorm without consent or reasoning. This action was extremely humiliating and degrading. The effects of this infringement has caused serious problems in my personal and profesional life.

c/o M. Richards

*

STO - 200 REV. 4/94
:Stock No. 6338-050-01)

Printed on recycled (or recovered) paper

| To | NAME, TITLE  Cpt Torres | DATE  4/2/97 |
|---|---|---|
| | AGENCY, ADDRESS | |
| From | NAME, TITLE  c/o M Richards | TELEPHONE |
| | AGENCY, ADDRESS | |

Subject: This letter is in regards to the fact that this officer - M Richards, was patted on my penis by Lt. Hoffman on March 31, 97 at approximately 1.30 PM in A-dorm without consent or reasoning. This action was extremely humiliating and degrading. The effects of this infringement has caused serious problems in my personal and professional life.

c/o M Richards

*

**Connecticut**
**Department of Labor**
*Working with you for a better future.*

Division of Occupational Safety and Health
Occupational Safety and Health Statistics
Occupational Health Clinics

July 11, 2001

Mr. Matthew K. Richards
483 Remington Street
Suffield, CT   06078

Dear Mr. Richards:

We have received your notice of alleged hazards against the State of Connecticut, Department of Correction, Willard-Cybulski Correctional Institution located in Enfield, Connecticut. After careful review, we have decided not to conduct an inspection because the alleged hazards do not fall within CONN-OSHA's jurisdiction. It involves conditions not covered by CONN-OSHA standards.

If you do not agree with this decision or need additional information, please contact me directly at (860) 566-4550.

Very truly yours,

Donald A. Heckler, Director
CONN-OSHA

dah/cfj

*Contact. Rick Suget*
*763 - 5164*

An Equal Opportunity Affirmative Action Employer
38 Wolcott Hill Road, Wethersfield, CT 06109    (860) 566-4550
Website    www.ctdol.state.ct.us

**Connecticut**
**Department of Labor**
*Working with you for a better future.*

*Division of Occupational Safety and Health*
*Occupational Safety and Health Statistics*
*Occupational Health Clinics*

July 11, 2001

Mr. Matthew K. Richards
483 Remington Street
Suffield, CT  06078

Dear Mr. Richards:

We have received your notice of alleged hazards against the State of Connecticut, Department of Correction, Willard-Cybulski Correctional Institution located in Enfield, Connecticut. After careful review, we have decided not to conduct an inspection because the alleged hazards do not fall within CONN-OSHA's jurisdiction. It involves conditions not covered by CONN-OSHA standards.

If you do not agree with this decision or need additional information, please contact me directly at (860) 566-4550.

Very truly yours,

Donald A. Heckler, Director
CONN-OSHA

dah/cfj

Contact. Rick Sweet
763 - 5164

# Connecticut
# Department of Labor

*Working with you for a better future.*

Division of Occupational Safety and Health
Occupational Safety and Health Statistics
Occupational Health Clinics

July 11, 2001

Mr. Matthew K. Richards
483 Remington Street
Suffield, CT   06078

Dear Mr. Richards:

We have received your notice of alleged hazards against the State of Connecticut, Department of Correction, Willard-Cybulski Correctional Institution located in Enfield, Connecticut. After careful review, we have decided not to conduct an inspection because the alleged hazards do not fall within CONN-OSHA's jurisdiction. It involves conditions not covered by CONN-OSHA standards.

If you do not agree with this decision or need additional information, please contact me directly at (860) 566-4550.

Very truly yours,

Donald A. Heckler, Director
CONN-OSHA

dah/cfj

*Contact. Pick Suget*
*763 - 5164*

INTERDEPARTMENTAL MESSAGE

**INTERDEPARTMENTAL MESSAGE**
RTO-201 REV. 4/94
(Stock No 6930-051-01)

Printed on recycled (or recovered) paper

| To | NAME, TITLE  Deputy Warden Dir |  | DATE  11-5-96 |
|----|------|---|------|
|  | AGENCY, ADDRESS |  |  |

| From | NAME, TITLE  c/o M Richards |  | TELEPHONE |
|------|------|---|------|
|  | AGENCY, ADDRESS |  |  |

Subject:

This letter is in regards to the fact that this officer has not observed nor have I been informed of any action taken against Lt. Chouinard for inappropriate behavior towards me and several other staff in the past 2 years.

My documented incidents include:

① Bogus charges of insubordination
② Denials of medical treatment
③ Instituting non existent policys and enforcing them through intimidation by his authority
④ Blatant and demeaning behavior and remarks

                                        c/o M Richards

P.S. anticipating an answer

* C.C. Cpt. Torres, Atty Machado

Printed on recycled (or recovered) paper

| To | NAME, TITLE _Deputy Warden Oei_ | DATE 11-5-96 |
|----|------|------|
| | AGENCY, ADDRESS | |

| From | NAME, TITLE _c/o M Richards_ | TELEPHONE |
|------|------|------|
| | AGENCY, ADDRESS | |

Subject:

This letter is in regards to the fact that this officer has not observed nor have I been informed of any action taken against Lt. Chouinard for inappropriate behavior towards me and several other staff in the past 2 years.

My documented incidents include:

(1) Bogus charges of insubordination

(2) Denials of medical treatment

(3) Instituting non existent policys and enforcing them through intimidation by his authority

(4) Blatant and demeaning behavior and remarks

c/o M. Richards

P.S. anticipating an answer

* C.C. Cpt. Torres, Atty Machado

Printed on recycled (or recovered) paper

| To | NAME, TITLE _Deputy Warden Dion_ | DATE 11-5-96 |
| | AGENCY, ADDRESS | |

| From | NAME, TITLE _c/o M Richards_ | TELEPHONE |
| | AGENCY, ADDRESS | |

Subject:   This letter is in regards to the fact that this officer has not observed nor have I been informed of any action taken against Lt. Chouman for inappropriate behavior towards me and several other staff in the past 2 years.

My documented incidents include:

(1) Bogus charges of insubordination

(2) Denials of medical treatment

(3) Instituting non existent policys and enforcing them through intimidation by his authority

(4) Blatant and demeaning behavior and remarks

c/o M. Richards

P.S. anticipating an answer

* C.C. Cpt. Torres, Atty Machado