**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MATTHEW RICHARDS, | : | CIVIL ACTION NO. |
| | : | 3:02CV884 (DJS) |
| PLAINTIFF, | : | |
| | : | US DISTRICT COURT |
| VS. | : | HARTFORD CT |
| | : | |
| STATE OF CONNECTICUT DEPARTMENT OF | : | |
| CORRECTIONS, and in their individual and official | : | |
| capacities, WARDEN NELVIN A. LEVESTER, | : | |
| LIEUTENANT MARK MURRAY, MAJOR PAUL | : | |
| BRADNAN, CAPTAIN NELSON RODRIGUEZ, | : | |
| | : | |
| DEFENDANTS. | : | SEPTEMBER 18, 2003 |

**AFFIDAVIT OF MATTHEW RICHARDS**

State of Connecticut )
                            )     ss:     West Hartford, August 11, 2003
County of Hartford )

I, Matthew Richards, being duly sworn, hereby depose and state, upon knowledge,

information and belief that:

1.      I am over the age of eighteen and believe in the obligation of an oath.

2.      I was hired by the Connecticut Department of Corrections in 1988. I have been

           assigned to the Willard-Cybulski facility, specifically the Willard building, since

           1992.

3.      On April 5, 2002 at 6:45 AM, I arrived at work and reported to the Willard

           building for roll call despite feeling ill. First shift is 6:45 until 3:00 p.m.

4.      I was informed that I was assigned to the Cybulski Building and was told by Lt.

           Richards that Lt. told me to use his personal vehicle to drive to the Cybulski

Building.

5.    According to established unit policy, once employees report to their "scheduled" facility, any movement between the buildings was to be by the transport officer and any use of a private vehicle was prohibited..

6.    I then informed Lt. Richards to send me transportation.

7.    At approximately 7:25 AM a vehicle showed up and transported me to Cybulski where I reported to I-Dorm at approximately 7:30 AM.

8.    Lt. Murray yelled at me and reprimanded me for taking so long to arrive and demanded an incident report from me.

9.    I informed the Lt. that I would write the incident report.

10.    My hands started to tremble violently due to the aggressive manner Lt. Murry spoke to me.

11.    I then became ill and my hands began to shake worse, due to being ill before arriving to work.

12.    After realizing I was too ill to continue working, I called Lt Murry and informed him that I was ill and my hands were shaking too violently to write the incident report and needed medical attention.

13.    Lt. Murray then informed me that he would get me a ride to Johnson Memorial Hospital.

14.    I waited in front of the building for a ride.

15.    Lt. Murry then came out and informed me that the Warden wanted to speak with me.

16.    I then became more upset because I had to see the Warden and was being denied medical attention.

17.    I stated all I wanted was to seek medical attention and not to see the Warden.

18.    I became more ill, my heart was racing and I felt dizzy and light headed from the added stress.

19.    During the ride over to the Williard building, I became even more ill and upon arrival I was met by Captain Torres, whom I assumed was there to escort me to the Warden's Office.

20.    I informed Captain Torres that I wanted a Union Steward present and Medical attention.

21.    According to Article 13 of the State of Connecticut Corrections collective bargaining agreement, an employee is entitled to have a union steward present when meeting with the Warden.

22.    I was denied union representation for my meeting with the Warden.

23.    I was also denied medical treatment for my illness and was forced to meet with Warden Levester.

24.    I then went directly into the Men's bathroom in the lobby because I felt extremely ill.

25.    I locked the bathroom door because I knew I was going to throw up and went over to the toilet to throw up

26.    I heard a commotion outside the bathroom door.

27.    I then heard Major Bradnan banging on the bathroom door and stating extremely loud "get your ass out here Richards".

28.    I stated that at that point I felt a surge of shock run through my body and stated that I was sick and throwing up in the toilet.

29.    Major Bradnan unlocked the door and swung it open and then propped it open with something.

30.    He then stormed in after me while I was on my hands and knees throwing up in the toilet.

31.    Major Bradnan stated "get the fuck up and come with me" and "I don't' give a fuck if you puke all over yourself or the wall".

32.    Major Bradnan was swinging his arms as he ordered me to get up and cursed at me.

33.    I told Major Bradnan that I couldn't get up and Major Bradnan left the bathroom.

34.    I feared for my safety because I did not know what Major Bradnan was going to do, due to the Major's previous acts of yelling, banging and cursing at me.

35.    The Warden came out to the lobby and stated to me that he was not going to tolerate insubordination towards his staff and also stated "your just a big baby Richards".

36.    I said to the Warden, "you're calling me a baby and all I wanted was some medical help".

37.    The Warden responded "That's right, I'm calling you a baby".

38.    The Warden then asked me if I needed an ambulance and I said "yes".

39.    Levester then ordered me to leave the building and not to return to work until notified.

40.    I was then taken to the hospital and treated.

41.    I was placed on administrative leave following the incident.

42.    I have been falsely accused by the defendants of being violent in the workplace.

43.    I was ordered to appear to the Department of Corrections Internal Affairs Department for questioning regarding the incident.

44.    Prior to the incident of April 5, 2002, I had been targeted by Murray and falsely reprimanded.

45.    Prior to the incident of April 5, 2002, Murray yelled at me and criticized me in front of other employees including calling me stupid.

46.    I have been retaliated against by the defendants for filing several grievances against other supervisors, including:

    (a)    I filed a grievance against Lt. Hoffman for intentionally making physical contact with my penis on March 31, 1997;

    (b)    I filed a grievance against Captain Rodriguez for intentionally making physical contact with my chest and groin.

47.    I have further been retaliated against for the filing of the present litigation as follows:

    (a)    On May 22, 2002, I filed the present lawsuit.;

    (b)    Following the filing on this lawsuit I has been retaliated by the defendants for the filing of this lawsuit.; and

    (c)    I have suffered adverse employment actions against me by the defendants following the filing of this litigation.

48.    I have been falsely reprimanded, criticized in front of other employees and humiliated by Murray and Rodriguez for the complaints and grievances I have

filed.

49. Lt. Hoffman and Rodriguez were not disciplined for their conduct against me.

50. During all times relevant to this complaint, as more particularly described above, the individual defendants violated plaintiff's constitutional rights by carrying out a pattern of outrageous conduct including harassment and retaliation.

51. Defendants' actions constituted retaliation and harassment towards me in violation of the First Amendment.

52. Such actions abridged rights to free speech secured to me by the First Amendment to the United States Constitution.

53. Defendants' actions were willful, intentional and done in spite of their actual knowledge or reckless disregard of plaintiff's constitutional rights.

54. Plaintiff have suffered severe mental and emotional harm and distress and other physical injuries.

55. The actions of the defendants were and are extreme and outrageous, shocking to the sensibilities of any reasonable person and will continue unabated unless strictly prohibited by the court.

56. Plaintiff has been forced by the defendants' actions to undergo the expense of employing counsel to vindicate his constitutional and other civil rights.

57. Defendants are not privileged in their actions by either qualified or absolute immunity.

58. As a result of the violation of my civil rights, as aforesaid, I was caused to suffer the following injuries, some or all of which are likely to be permanent in nature:

1: Loss of wages, and future lost wages and benefits, and dignity;

2: Depression, anxiety, fear, and trauma, associated with being unlawfully

harassed, intimidated, and retaliated against by the defendant;

3: Physical illness, including, dizziness, vomiting and increased blood

pressure.

Matthew Richards

Dated at _____, Connecticut this 16th day of 2003

Notary Public/Commissioner of Superior Court

My Commission Expires: _____

Erin I. O'Neil

## **CERTIFICATION**

This is to certify that the foregoing has been sent, postage pre-paid, on September 18, 2003, to all counsel and pro se parties of record:

Tammy D. Geathers

Assistant Attorney General

55 Elm Street

P.O. Box 120

Hartford, CT 06141-0120

Erin I. O'Neil

15